7-0 United States v. Molina-Isidoro. And we have Mr. Lopez for Ms. Molina-Isidoro. Good morning. First, if I pause in the middle of my argument to drip some water, I hope the court won't be offended. I'm getting over the flu and it's just been a tough week for me as well as all of my family. I'm sorry to hear that. Don't breathe on me. I will try very hard not to. The facts of this case I really don't need to get into because this is not a factual case. I do have one question about the facts, and maybe this is a dumb question because nobody's raised it. But given what they found and what they admitted to, what did the cell phone information add that was necessary to the conviction, without which there could be no conviction? Well, it really not so much as a question of conviction, but it goes to a question that I believe would be a weight of the evidence question for the jury. During the search, of course, they found the narcotics in the suitcases, at which time the agents asked Mrs. Molina why she was traveling, where she was traveling to. She gave a lot of statements that in her, where she was going to be going to, where she was going to travel to, how long she'd been in Juarez, what she had done in Juarez. The court recalls this is a true border search. She did go from El Paso, Texas to Juarez, Mexico, and then crossed back. It wasn't a plane search or anything of that nature, or entering the United States with a plane. But wasn't the quantity of drugs sufficient to show that it's not just for personal use and all of that? Oh, clearly. And she admitted to the travel between Juarez and El Paso that would be sufficient to show the interstate or international commerce or whatnot. And so, what is it, again, that the, I mean, if in fact this evidence had been introduced without the cell phone material, would there have been sufficient evidence to convict her? There, yes and no. She denies ownership of, she denies knowledge of the drugs inside her suitcase, on the initial. So when she's questioned. You said no one else had access to it. That. Then there's this nonsensical story. I mean, I think to get what Judge Haynes is getting at, I've seen people convicted on far less than they had before they ever touched the phone. Maybe it's a question for why the government needed to, I mean, it was the government's choice to put that before the judge at the bench trial. I don't know why the government thought that was necessary, but. Let me ask it this way. What did the information gleaned from the cell phone add to the prosecution? I mean, maybe sufficiency is not the issue, but was there something in the cell phone that added to the weight of the evidence for the government? It would have completely impeached everything that she said. Every claim of, I didn't know that there were drugs in my suitcase, the trip to my brother, that she was traveling from Morris to Mexico and then returning to Tijuana as opposed to on the cell phone, they found the tickets that she was supposed to be going to Florida. All of the information that she obtained on the, that the government obtained on the cell phone by reading the messages on WhatsApp, as well as the Uber messages or the Uber request showed a story that was inconsistent with what she was telling. But her own story was inconsistent with itself. I mean, like Judge Costa said, I've seen a lot less evidence and we've upheld that. She contradicted herself. Her story made no sense whatsoever. She didn't know her brother's own address, et cetera. And while you might not know it down to the zip code, you tend to know if you just went and visited your brother where he lives. And so it just seems to me, I understand the cell phone kind of it adds the word stuff, although stuff can mean a lot of things, but I'm just having trouble with why, I mean, I agree. I think it's a kind of hoggy on the part of the government to use it because it adds this element of now we have to decide this issue potentially, but why isn't it harmless error? I mean, I guess that's it. If it's error, why isn't it harmless? Why do we have to decide this big international question of cell phone review in a case where as far as I can tell, it makes very little difference. Well, Your Honor, the whole purpose of why we have jury trials is because we don't know what a jury would do in this situation or this evidence. Yes, her story was viewed in light of common sense or whatever, what one person's viewing of this evidence would be is whimsical or nonsensical. There is part, you never know what a jury will do. And so But that's true with the cell phone. I mean, I won't give examples, but there was a case 20 years ago, a lot of people thought someone was found not guilty that everybody thought was guilty. So there was a lot more evidence in that case. And so I guess what I'm trying to say is you all chose to not go to a jury and instead you do it on stipulated facts. I don't think that's the standard for harmless error, if any, because then that would always be true. I mean, you could always say this extra piece of evidence might have made the And that's not how we assess that. No, I understand. But the court needs, I would like to think the court would be examining this in terms of what is it the government can do at the border, whether they can search But that's a, I want to be sure if I'm deciding an issue of that, that brings us all these amicus and all that weighty, it seems like it should make a difference. If the search of the cell phone had found the evidence of the drugs or something like that, but here or maybe they found a co-conspirator through that and then that's something, you know, whatever, that's something else. But here, to me, as I'm looking at it, I'm just questioning why we're deciding this huge, potentially big ramification kind of issue in a case where I mean, I read the one text they put on or whatever it was, combination of it, the three paragraphs, and I'm like, okay, so what? Right. What does that add to the fact that she's got all these drugs in her secret compartment that she says no one else had access to? That gets you possession with intent pretty clearly. And I do apologize for not having the year on this case, but this court back prior to the case, I believe it was Ortega, about 15 years ago, just being in a car was enough or was sufficient evidence to show that there was ownership or the government didn't have to prove knowledge. And then the Fifth Circuit said no, that there was a case involving a Mexican national, I mean, a U.S. citizen who had borrowed a car, borrowed a truck. It wasn't his. He drove it across the border. No, I understand the health department cases that you have to show more than just But the evidence she gave them of no one else had access, I'm the only one, and then her story back and forth about the brother and all that, that would be sufficient evidence. That's why I started with the sufficiency question. And then Judge Davis correctly reframed it to say, well, what difference does it make? And that's the discussion we've been having. You know, to be fair to you, I think you've answered as best you can what I've said, so I want to be sure you address. Let's assume, arguendo, we need to decide the issue of the cell phone. Please tell us about that. Getting to that issue, though, I do think there's an implication of this line of questioning, which is, I mean, Judge Haynes, we've been suggesting that there may have been sufficient evidence to convict based on what they had before the cell phone, but there was certainly reasonable suspicion and probable cause based on that. So doesn't that mean your whole challenge to the search is really just about the warrant requirement? That is correct. You would concede there's reasonable suspicion here. I mean, we're suggesting there was enough even to convict before they got to the cell phone. But when they find this thing of meth in a hidden compartment or suitcase, isn't there reasonable suspicion? At that point, my argument and my position to the court is that you don't have to make this decision to address this to any broader than what it is. I think at this point, when they have searched the suitcase, they found the narcotics, they have detained her, at that point this case fits right in with Riley in that it's a search incident to arrest. And because it falls into that category, Riley applies, and the... So you think once someone's arrested, the border search is completely out the window? I think that's true. I think we have cases that say even when there's border cases where someone's been arrested. But aside from that, why should someone who's arrested at the border then enjoy greater rights than an innocent person at the border who can be subject to all these warrantless searches? Well, the question is whether that person do rights then apply to only people who are arrested as opposed to innocent people. The rights should apply across the board. Right, but you're saying it's less. Yeah, you're saying... Once they're arrested, or their rights are greater once they're arrested. We can all get our cell phones searched, but she can't because she was arrested. That's... So you're better off being arrested. No. You'll get your cell phones searched. Well, if the court wants to, then my position is that no. The protections are... The arrest adds greater protection because at that point, this case falls directly into O'Reilly. It's a search incident to arrest, and O'Reilly addresses that. But as far as a border search goes, no, I think a person that is crossing the border, that the government does not have a right to go into the contents of my phone because of the nature of the phone and because of the way the court addresses or defines what the phone is in our lives and our world today. Coming across the border, you're asked the questions of nationality. Are you bringing anything? Customs and duties, you know, cursory searches of your bags, of your car. Wouldn't your cell phone potentially show that... I mean, one of the questions they ask you is have you been on a farm. I don't know if they're going to keep you out of the country if you've been on a farm, but they ask you that. Wouldn't your cell phone perhaps show if you've been on a farm? You say no. Your cell phone shows you took a tour of the Jones Farm or whatever in Argentina. That's correct. But that's the problem is that it just doesn't only show that. If you're not walking around with a device that's only a GPS machine, you're talking about something that is almost you. Let me ask you this. Yes. She didn't apparently have a deal where you have to enter a code to get onto her phone. Does that change the expectation of privacy? I mean, most of us have phones. You have to enter a four- or six-digit code to open it. And there's no indication that was the case here. Does that change her expectation of privacy that she's got a phone that if she leaves it on the counter, anybody can pick it up and read it as opposed to where you have at least a security code you have to enter? Well, the security codes, depending on how much time you want to give yourself, it automatically turns on. Anytime you close the phone, whether you want to give yourself a two-minute, ten-minute window, 15-minute window. But does that affect the expectation of privacy? Not at all. Not at all. The how you wired your code or had no code. Let me ask you one thing. In Montoya, I think it was, the lady crossing the border, they had reasonable suspicion that she'd swallowed drugs and was going to get them across in that fashion. And the court held that even though you, I can't imagine any more right of privacy than you'd have to not have a strip search and have a rectal exam, and they said that was okay crossing the border. So, I mean, if that's not too intrusive, how could examining a cell phone be too intrusive? I'm on read. May I answer your question? Yeah, you can answer it. I thought about that. In fact, I was wondering what kind of intrusiveness, if you're allowing that. But I think there's things that make Montoya different. First off, they offered Montoya a less intrusive way. They offered so she could submit herself to an X-ray. When she failed to, when she decided not to do that, when she decided not to take the X-ray. Which she had the right to do. Which, of course, she had a right to do. At that point, they waited until she passed the material out of her body. There wasn't an invasion of her personal, of her orifices. Rather, they just waited. They had a rectal exam. I read the case to say they had a rectal exam. The thing is, is that they already had a suspicion or they believed that she was a drug courier, whereas opposed to me or anyone crossing the border with a cell phone, you don't have that suspicion. And as it stands right now, the border search doctrine would allow the searches of a cell phone and in this instance, the searching of apps. What I've looked at, where I've been, what I've done, what I read. I think you're getting, I think you've answered Judge Davis' question. You've reserved time for rebuttal and you yielded time apparently to Ms. Bondari. So let's hear from her. Thank you. May it please the court. Aisha Bondari for Amici, the American Civil Liberties Union et al. I would urge this court if it does decide to address the issue of the scope of the government's border search authority to consider the implications of the ruling for the many millions of travelers who cross the border who are never suspected of a crime or charged with a crime. But what about if we said there was reasonable suspicion or probable cause and that's what you need, that wouldn't really, most people there isn't reasonable suspicion or probable cause, just the average person coming across the border. So this would not affect the millions and whatever, it would only affect the people that you find, you know, a couple of kilos of drugs in their car. Is that a problem? Your Honor, the district court in this case certainly said that there was probable cause. We believe that Riley counsels that a warrant is required and that the Supreme Court would find that a warrant is required. And certainly in this case, once the drugs were found, as the district court said, there was probable cause and the government could have sought a warrant. There was no longer any urgency. We would be the first court, wouldn't we, in district court, courts of appeal at any level, and maybe you're right, Riley requires this, but wouldn't we be the first court at any level to say you need a warrant for a border search? You would be the first court to squarely hold that to my knowledge. But I want to emphasize that in Montoya de Hernandez, the Supreme Court said that the 16-hour detention based upon reasonable suspicion for purposes of the elementary canal search was permissible. But in that case, the agents had actually sought a court order. They had sought a warrant for the involuntary search itself. And in U.S. v. Ramsey, which is a 1977 Supreme Court case, where the court considered the opening of letter mail, international first class letter mail, the court assumed as a critical part of its holding that a search warrant is always required for the reading of the mail. And it said that those letters could only be opened upon suspicion of there being physical contraband goods. And so a warrant for certain types of searches is not inconceivable. And, in fact, it was present in both Montoya de Hernandez. In your brief, I think you touch on this, but there's been a lot of emphasis, and in Riley the issue is, wow, these phones have so much capacity. That's why they deserve more Fourth Amendment protection. But is it really the best argument in this case that the limitations of cell phones and computers is why the border search arguably shouldn't apply? Because you can't hide contraband in them. Or I guess you could put drugs in them, but you could just X-ray to find that. You don't need to actually go into apps. But that's not a search for contraband. It's search for evidence of crimes. And really the core of the border search is preventing contraband from coming into the country. We certainly agree with that. And I think if you look at the earliest cases delineating the justifications for the border search, starting with Boyd, as described in Carroll and then later elaborated on by the court, the concern has always been with physical contraband goods. Yeah, but nowadays terrorists use cell phones too. And I could see to where you might have concerns about somebody plotting a terrorist attack, and you don't have a whole lot of time to figure that out. And so, yes, I do see that in this case it isn't going to reveal anything other than perhaps evidence of the drug use. There's no indication she was a terrorist. But you're asking for a broad ruling on border searches, which could have a lot of implications, particularly in the area of terrorism, where seconds, minutes count. And the time needed to get a warrant could be the difference between a terrorist attack being foiled or achieving its goal. I think Riley is instructive in this as well, Judge Haynes, where the court said that a warrant is generally required to search the cell phone of an arrestee. But in a truly now or never moment where we're talking about seconds, there's no time, there may be the exigent circumstances exception to fall back on. And so the Riley court considered that and considered the small run of cases in which a cell phone may in fact contain information about harm to the arresting officers. But in the mine run of cases, the privacy intrusion would be so great, and the possibility of that type of information would be. If we're going to go with Riley, then why wouldn't we adopt the argument that Melinda Isidoro's counsel made, which is once you've arrested her, it's a search incident to arrest, Riley governs, we're done, and we don't have to reach the question of a general border search of somebody with or without reasonable suspicion, with or without this or that, because she was arrested, she falls in Riley. What's wrong with that argument? That is certainly an option that is available to you. As amici, we simply urge that if you do not choose that option and instead rule on the scope of the border search exception to consider the massive privacy invasion that occurs for the many travelers. Quickly, I want to ask, what do other countries do in terms of searching cell phones? I think the practices vary, and one of the concerns, of course, is the rule that the U.S. adopts may be adopted. Exactly. Thank you very much. Mr. Shanker. Thank you. Good morning. May it please the Court, Vijay Shanker for the United States. Your Honors, I'm going to start where I assume you might want me to start, which is the question you started with my colleague, which is what was the importance or significance of this text evidence. It's our position that while there was sufficient evidence on its own without this information to have convicted Ms. Molina-Isadora, this was important evidence. If this had gone to a jury, which of course we know it did not, if this had gone to a jury, a typical risk-averse prosecutor would certainly have put this in because, as my colleague said, Ms. Molina-Isadora had contested ownership of these drugs. And although we did have evidence that she, you know, said that her suitcase had never been out of her possession, she could have raised that, again, if this had gone to a jury. She could have raised that to a jury. So you think it would be harmful error if it was error? No, I still think it would be harmless. It's harmless error. Okay, so why don't you explain that? Because you didn't make that argument. I made that argument. So I'm wondering why you didn't make the argument. If we were to say we don't see why we need to reach this whole border thing and this just is harmless error, what would be wrong with that conclusion? I don't think there would be anything wrong with that conclusion. I will confess that we batted this around in my office and we thought that the harmless error argument would actually meet some resistance by the panel, to be honest. And so we chose not to make it in the brief. And usually the government has to argue that and have the burden. That's right, Your Honor. It's just surprising. I've seen cases with so much less evidence where there's been convictions at the border. But her story was just nonsensical. It was, Your Honor. Are we barred from finding harmless error because you didn't put it in your brief? I think it would still be within the court's discretion, again, to affirm on any basis that's apparent in the record, and the record here is clear. So I don't think it would bar the court from relying on harmless error. So what was the harmless error that you batted around argument that you didn't make? Well, Your Honor, I think, again, given that the defendant had contested ownership and could have contested intent either before the bench, this was a bench trial, or before a jury, our conclusion was this was – it's not that it wasn't harmless. It's just that this was significant evidence to counter any argument that she would have made about lack of ownership. What was on the cell phone that would help the government show intent and knowledge? That she had actually picked up this stuff, which we could have assumed were the narcotics, and actually had a ticket not to where she said she was going but to Fort Lauderdale. The text was – I think it was highly incriminating. It was the frosting on the cake, but it just seems like the cake was already baked. Yeah, I think that would have been a close call to a risk-averse prosecutor. Isn't it risk-averse to create a big appellate issue? I mean, I guess it depends. Well, Your Honor, we play the hand we're dealt, all of us, but to me this is a very huge issue for a case where, I mean, it seems pretty apparent how it would come out. And that's my concern is I prefer to decide issues when they really matter. And here, to me, it doesn't seem to, but I may be the only one who thinks that, and that's okay. Your Honor, to be – again, I didn't try this case, but I do think that at the time a prosecutor would be thinking about how can I win this case. And in the context – given the state of the law on this issue, and I respect that this is a difficult issue and I'm not minimizing the weight that's on the panel to decide this matter, but the case law, in our view, is quite clear on this from the Supreme Court and this Court. And this was a border search. As Your Honors have noted, the fact that there was an arrest did not terminate the Border Search Authority nor did it terminate the justifications. But doesn't it – well, does it? I mean, so at that point you're going to seize all of her articles that are on her. You're going to inventory them. You're going to take them to the station or wherever you go. And at that point you can easily go get a warrant. So while it may seem like a bothersome little procedural doodad, it's kind of an important one in our world. And why not just do that? There's no – there's not this immediacy of the terroristic threat. There's not the immediacy of maybe she's going to swallow the drugs or something like that where evidence will disappear. There's no indication in this file that she had some sort of – you know, a mini-bomb kind of – not a literal bomb, but one that allows your phone to be erased after a certain amount of time. There's no indication of that where the evidence would be wiped out that way. You all had physical custody of it. You take custody of it. You get the warrant, and then you search it. Well, Your Honor, of course now we're dealing with the closed record and the facts that were stipulated to. At the time that the officers were engaging in this conduct, they didn't know. They didn't know that the defendant didn't have other bags coming through that might have had contraband. They didn't know that the defendant didn't have accomplices that were coming over that might have had additional drugs. They didn't know that her cell phone wouldn't indicate that the papers that they had presented to them were in fact forgeries. They didn't know that the cell phone might not indicate that she had also engaged in financial – had narcotics proceeds secreted away somewhere. Well, let me ask you, as you've just been explaining, there's a number of reasons to believe evidence of crimes, related crimes, border crimes, could be on the phone. But what Supreme Court case has said that the border search involves finding evidence of crimes, even cross-border crimes, as opposed to contraband itself? You know, Montoya Hernandez, the drugs were in her system. The statute that's been – you can trace back to the beginning of the Republic actually specifically talks about merchandise or property coming across. So what Supreme Court case stands for the proposition that the border search is not just about getting contraband but about getting evidence of the crime? Well, Your Honor, I'm not sure there is, but I would respectfully challenge the premise that I was talking about evidence. What I'm talking about is in furtherance of the justification for the Border Search Authority, which is to prevent the entry of – But what – by looking at apps on her phone, what contraband were they going to find? Again, the apps could – They might find evidence that there was other contraband out there. Well, no, they could still – that could further the purpose of stopping additional contraband from coming in. For example, now, again – Oh, I agree, but to me that's evidence. The drugs were not in the phone. No, but they could – it's not evidence that – not in the sense of using the evidence to convict the person or to prosecute the person. I'm talking about evidence in the sense of data that shows – that you have at an airport, which is the functional equivalent of a border, of course. No, she could have a text saying, the real big load in the truck is coming 10 minutes after you, and that would lead law enforcement to then stop that truck. I get that. But that's still – it's using the phone for evidence of other crime. Right, but that's the purpose. But what Supreme Court case involves that? I don't think it's the evidence of the crime in order to prosecute the crime.  And I think that the Supreme Court cases haven't talked specifically about the information value. But, of course, the border search doctrine has existed well before cell phones existed, and it's well accepted that officers could search papers, could read papers, could read diaries. Well, so was search incident to arrest, but the Supreme Court seemed persuaded that the notion that you're carrying around a lifetime diary is different from the normal papers you might have. You might have a letter, one letter, but here you have your whole life. If you have a big text or e-mailer, your whole life is on that phone as opposed to the one letter you might have in your pocket in the old days. Right, but the key there is that the purposes underlying those two exceptions are vastly different. So the purposes underlying the search incident to arrest exception are to prevent the defendant or the suspect from gaining access to a weapon that might harm the officers or from destroying evidence. Here we're talking about preventing the entry of contraband or unwanted persons. And so if prior to the invention of cell phones, officers could read papers in order to affect that very purpose, in other words, as Judge Costa said, well, they could read information that would tell them that additional drugs are coming across the border. That information 50 years ago was in papers as opposed to data, but it's the same concept. Okay, so is there a threshold if we were to accept your argument that border searches are different? Is there a threshold requirement? Do you need reasonable suspicion? Do you need probable cause? What do you need to search a cell phone? For example, if I come into the airport from Mexico to Dallas, they can search my luggage without really anything as far as I understand it. However, for my cell phone, would they need more than that? They would not. They would not as you're articulating. There is no level of individualized suspicion, and the court has made that clear. This is a personal. So cell phone no different than the suitcase. What about a forensic search? I know we're not dealing with that, but a forensic search of the phone where the Ninth Circuit even pre-Reilly said reasonable suspicion. Your Honor, it's a harder case. We continue to disagree with the Ninth Circuit's decision in Cotterman, but certainly a forensic, a deep forensic examination that takes place subsequently, it's a tougher question. We would still submit that no individualized suspicion is required. We would urge the court not to adopt Cotterman. Of course, that's not at issue in this case. This was clearly done at the court. This was a search incident to an arrest, was it not? It was not, Your Honor. It was done pursuant to the border search authority. It was both. Well, Your Honor, I would disagree because the fact that an arrest had taken place does not terminate the border search authority. The pre-existing authority to search the defendant's effects for the purposes of the border search doctrine still existed once she had been arrested for all the reasons that I just mentioned. That phone could have indicated a lot of information that was critical to border search officers. Do you agree? I know the statute and the constitutional requirements are different, but do you agree with me that the statute doesn't address this situation because the statute just authorizes searches when there's merchandise. There's reason to suspect merchandise that was imported contrary to law. In really tracing all those statutes back, they're talking about the authority to search for contraband or for material that customs duties aren't being reported on. Right, yeah, I would agree with that, Your Honor, but I don't think the statute is the limit on the border search authority. I agree. What about the issue I raised with Mr. Lopez about the question of expectation of privacy when you have a phone that can be accessed, whatever the security code situation was, it was able to be accessed by just any random person without obtaining any forensics code or anything else. I mean, I just grab the phone and start looking at it. Does that alter the analysis in terms of her expectation of privacy if she has a phone that anybody can pick up and start reading? Your Honor, I think to the extent someone has a phone that does not require any type of password, it's certainly a reasonable conclusion that that individual lacked a reasonable expectation of privacy on the phone. But I would not subscribe to the converse argument, which is that simply inputting a password, requiring the input of a password into your phone, raises your expectation of privacy to the extent that a border search. You see, you all keep wanting us to decide this major headline kind of issue, and I'm kind of a step-by-step sort of gal. I try to decide the issues as they're presented, only what's necessary to decide the case and resist the urge to write the 100-year opinion. And so it seems to me in this case there's a lot of narrow grounds. There's the good faith exception, which you argued in your brief but hasn't been discussed here. There's her expectation of privacy, which is different. There is the fact that there was probable cause. Whether needed or not, it was there. So what would be wrong with a narrow holding that says, we don't need to decide whether every cell phone under the sun can be searched because in this case, blah-biddy-blah. What's wrong with that, a more judicially conservative approach? Your Honor, there's certainly nothing wrong with that. Obviously, we argued good faith. That would be, to us, an acceptable way to decide the case. Harmlessness, obviously, we didn't raise it in our brief, but as we discussed, we think it's still open to you. And even saying, as this Court did in the Roberts decision, although that was some 17 years ago, just assuming reasonable suspicion was required, it existed here. The only risk with that type of decision, I think, or the downside of it, is that it's not really tethered to any legal doctrine. The Supreme Court, the only case in which it has said that something more than an absence of individualized suspicion is required, is the case of a highly invasive search of the person. There is no authority for the proposition that the search of a personal effect requires anything more than individualized suspicion. So while the Court could say, well, at most, reasonable suspicion was required here and it was certainly present and we would not have a problem with that, again, I don't think it's really consistent with the state of the law. The state of the law makes clear that no individualized suspicion is required. So how does that affect – that means that whenever we all travel to a foreign country, all of our cell phones can be read by people in those – the border authorities in perhaps hostile countries or semi-hostile countries, like if you travel to St. Petersburg on a cruise or something like that. Well, Your Honor, I can't speak to what other countries might – what their policies might be, and I can say that when we come back to our own country, our phones are subject to search, and maybe that's a little unsettling, but that is the nature of the border search doctrine. It's more than a little unsettling. I mean, you're a lawyer. I know you have sort of one client, but if you were a private attorney representing a bunch of clients and you're carrying around a cell phone because lawyers can't take a vacation, they have to go – they have to be working all the time, and you come back now, the border authority can read all about your clients and all about what's going on, and you're a U.S. attorney. You can read all about what's going on in the U.S. attorney's office, which may or may not be something you want known. A public defender or attorney for a defendant has information on the cell phone pertinent to the client's guilt or innocence, et cetera. I mean, all that gets to be just read by some random border agent? Well, Your Honor, there are protocols in place by CBP to prevent that sort of thing. Agents are instructed that when they see lawyer-client communications, they are not to read those. There are procedures in place to put in filter teams. But, again, that is, I think, a smaller part of the point. That's the rule you're asking us to announce. We're just relying on the good faith of some policymaker somewhere to say, oh, well, the judge's iPad shouldn't be read to see how this case is going to come out when she just dares to come back home from somewhere. This was the case before cell phones were ever invented. Papers could be read when someone presented themselves at the border, when they choose to present themselves at the border. The Supreme Court has done that. But in the old days, when I used to travel as a lawyer, I didn't take all of my client files with me. I could call long distance and talk to someone, and this is how we did the work. Now people take their iPhone or their iPad or their laptop or something like that, and that's got a lot more information than otherwise it was in my head. Maybe I made some notes that I could then throw away, but I wasn't carrying around boxes of client files going all across the world. It's certainly not hard to fathom that an attorney who comes back to this country from abroad carries a file, a handheld file, with papers in it. It is perfectly within the Fourth Amendment. The Supreme Court has made clear for border agents to read those documents. And so the fact that cell phones now exist has not changed that broad nature. So if it is password protected, the cell phone or an iPad or a computer, then it gets to a Fifth Amendment issue if the person coming across the border won't tell the agents the password, right? Well, I don't think that's necessarily protected by the Fifth Amendment, but what generally happens is that the person is asked for their password. And if they say, no, I'm not giving it to you, it's my client files, what happens then? Then if the person is otherwise authorized to enter the country for example. Assume they're a U.S. citizen coming back. I know there's some different issues with someone coming in from outside. A U.S. me coming back into the country. Then you would not be detained. You would be let into the country, and then it's a case-by-case analysis. What CBP officers would do in that situation, but they would retain the authority to figure out different methods to gain access to that cell phone. So they'd keep my phone. I'd come in the country, but they'd keep my phone. Right. Go get a warrant, which you all could have easily done here. Well, but you'd say they could do a forensic search even without a warrant. That's right. And a forensic search, they can try to overcome those. Your Honor, on the point of whether we could have gotten a warrant, the Supreme Court has made clear, it made clear in the Ramsey case, and then this court repeated this point in a case called Jackson, that the Border Search Authority does not rest on exigent circumstances at all. It's not an exigency factor that underlies the Border Search Authority. I mean, you're reading of all the cases I can't quibble with, but the one problem it has is our court and a number of others had said in the Riley world, oh, search incident to arrest. It's always been the case you don't need a warrant, so that applies to cell phones too. And then the Supreme Court just basically said, given how much capacity they have and all these things Judge Haynes pointed out, cell phones are different. I mean, you could have been arguing the same thing in Riley that search incident to arrest has applied for all this time and cell phones are no different, right? We did. That was the government's position. And we lost. But the fact is that the purposes underlying the search incident to arrest exception are what the Supreme Court mostly relied on in saying that they don't apply with cell phones. But that's not the case with the Border Search Authority. Those justifications behind the Border Search Authority apply in full force to the search of data, just as much as they do to the search of documents, written material, anything. If you move from a foreign country to this country and you bring over your entire house, the Fourth Amendment allows officers to read your diaries, read your address books, flip through your photo albums. If that's what they choose to do. And so nothing has changed in the cell phone world, really. Even though it's all in the space of a hand, it's the same concept. Okay. Thank you. I appreciate it. Mr. Lopez, you have a few minutes for rebuttal. Your Honor, at this time, if the Court would allow me, I'd like to cede my three minutes of rebuttal to Ms. Vendari, if that's okay. All right. Quickly. I would just like to make a couple of points in response to the government's argument. First, I think in Montoya de Hernandez, the nature of the invasion, the privacy invasion, was a dignitary harm. But Riley made the point that the quantity of information that you could ever have gotten from a search of the type in Montoya de Hernandez was limited. In Riley, the Supreme Court made clear the type and nature and scope of information you can get from a cell phone would be greater than you could even get in an individual's house, unless, of course, you were to find their electronic devices there. And on the point about attorney-client-privileged materials or journalists-privileged materials or priests-privileged materials Or judges. Or judges. All of this information that is accessible, according to the government's policies, CBP and ICE policies, there's a requirement of consultation with a supervisor. There is no absolute prohibition on this information being searched or retained at the border if the higher-ups decide. And that certainly cannot be the constitutional answer. And Riley itself said that the Fourth Amendment doesn't rely on people having to rely on government protocols. Well, all of these are kind of protections against the government, frankly. I mean, that's the issue. If why you have a Fourth Amendment is to prevent a police state where people just come in randomly searching your house, you could say, well, if you have nothing to find, what do you care? Well, because you don't like having your stuff searched by somebody. So, I mean, I don't know that that – I agree with that. I think this idea of the protocol answers the question is not a constitutional answer. But you do have the problem that the border search stuff is pretty broad. Your Honor, we think that Riley showed that even in the context of a longstanding historic exception to the warrant requirement, that the extension to a new category of effects, in this case digital devices, has to be analyzed on its own. And it doesn't disturb the longstanding precedent and the longstanding power dating from cases like Boyd. And Boyd was very clear. There's a difference between searching goods that the sovereign has a right to seize, retain, impose duties on. That can be contrasted with searching for evidence that is to be used against an individual. Thank you very much. Okay, very interesting case. We appreciate all the arguments. And, Mr. Lopez, I see that you're court-appointed. We appreciate your accepting that appointment, and we appreciate all of counsel's presentations here, cases under submission.